UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LLOYD ALLAN JONES,** : | |
| Appellant, : | |
| vs. : | No. 3:CV-18-01680 |
| **U.S. BANK, N.A.,** as Trustee for Residential Asset : | |
| Securities Corporation, Home Equity Mortgage : | |
| Asset-Backed, Pass-through Certificates, Series : | |
| 2006-EMX9, and : | |
| **AMERICA'S SERVICING COMPANY**, : | |
| Appellees. : | |

BRIEF IN SUPPORT OF
MOTION FOR STAY OF ORDER PENDING APPEAL

I.   PROCEDURAL HISTORY

Appellant Debtor Lloyd Allan Jones ("Jones") filed a Chapter 13 Bankruptcy Case on May 25, 2016 in the United States Bankruptcy Court for the Middle District of Pennsylvania ("the Bankruptcy Court"), docketed 5:16-bk-02223 ("the Bankruptcy Case"). At the time, Jones owned a residence known as 303 Rustic Drive, East Stroudsburg, PA 18301 ("the Property"). The Property was subject to a mortgage in favor of U.S. Bank, NA, as Trustee for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed, Pass-through Certificates, Series 2006-EMX9 ("US Bank"), which was serviced by America's Servicing Company ("ASC"). Upon realizing that his Chapter 13 Plan, which required ongoing direct payments to ASC and payment of mortgage arrears via Trustee, was infeasible, Debtor filed a First Amended Chapter 13 Plan that provided for satisfaction of the security interest of US Bank in the Property pursuant to 11 U.S.C. § 1325(a)(5). On March 6, 2017, Jones filed Adversary Proceeding 5:17-

bk-00036 ("the Adversary Proceeding"). Docket Entry No. 2, at pages 9-162. On January 4, 2018, Jones filed a Second Amended Chapter 13 Plan to conform his Plan to the stipulated value of the Property in the Adversary Proceeding. Docket Entry No. 2-1, at pages 1-10. See also, Docket Entry No. 2, at pages 163-166. On March 22, 2018, the Bankruptcy granted Summary Judgment in favor of Appellees in the Adversary Proceeding ("the March 22 Order").

On April 5, 2018, Jones filed a Motion to Extend Time to Appeal, which was Granted on April 23, 2018. On April 19, Jones filed a Notice of Appeal of the March 22 Order. Also on April 19, 2018, Jones filed a Request for Certification of Direct Appeal to Court of Appeals. On May 7, 2018, Jones filed a Motion for Stay of Order Pending Appeal in the Adversary Proceeding. On May 9, 2018, the Motion for Stay was Granted on an interim basis and the Bankruptcy Court entered a Certification of Direct Appeal. On June 5, 2018, the Bankruptcy Court entered an Order that Denied the Motion for Stay of Order Pending Appeal. On June 8, 2018, Jones filed a timely Petition for Permission to Appeal with the United States Court of Appeals for the Third Circuit ("the 3rd Circuit"). On June 28, 2018, Jones filed a Motion for Stay Pending Appeal with the 3rd Circuit. On August 22, 2018, the 3rd Circuit Denied both the Petition for Permission to Appeal and the Motion for Stay Pending Appeal. On August 23, 2018, the Notice of Appeal was docketed with this Court. On September 5, 2018, Jones filed the pending Motion for Stay of Order Pending Appeal with this Court.

## II.   STATEMENT OF FACTS

The Second Amended Chapter 13 Plan ("the Plan") provides for monthly installment payments to Appellee ASC, as servicer for a mortgage held by Appellee US Bank. The Plan provides for payments equal to the value of the Property, which was stipulated to be $136,000, plus interest over the life of the Plan, for total of 155,865.60, in satisfaction of Defendants' mortgage interest in his residence ("the Mortgage"). It is also stipulated that the Property is Jones' principal residence, and the Mortgage is not secured by additional collateral. Docket Entry No. 2, at pages 163-166.

## III.   STATEMENT OF QUESTION INVOLVED

**Should Appellant's Motion for Stay Pending Appeal be Granted?**

Suggested Answer: **Yes.**  The Appeal presents "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *In re Gen. Credit Corp.,* 283 B.R. 658, 659 (S.D.N.Y. 2002), quoting *Random House, Inc. v. Rosetta Books, LLC,* 283 F.3d 490, 491 (2nd Cir. 2002).

## IV.   ARGUMENT

### A.   Standard

This Court must consider "(1) whether the applicant has made a strong showing of success on the merits; (2) whether the applicant will be irreparably harmed absent injunctive relief; (3) whether issuance of the stay will injure other parties; and (4) where the public interest lies." *Rivera v. Lake Berkley Resort Master Ass'n*, 532 B.R. 425, 426 (Bankr.D.P.R. 2015), quoting *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16, fn. 3 (1st Cir. 2002), citing *Hilton v. Braunskill*, 481 U.S. 770, 776-777, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987). The appeal need not actually demonstrate a strong likelihood of success on the merits, as in application the "proper standard governing the strength-of-the-case component of a motion for a stay pending appeal of a bankruptcy court order is 'substantial possibility' of success on the merits." *In re Gen. Credit Corp.,* 283 B.R. at 660. Appellant must mere present "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *In re Gen. Credit Corp.,* 283 B.R. at 659.

### B.   Merit of the Appeal

The appeal is from a final order, as the March 22 Order was a final judgment of the Bankruptcy Court in the Adversary Proceeding. While the March 22 Order also had a direct impact on confirmation of the Plan, that does not deprive it of the status of a final order. Appellees' indication to the contrary is part of a systematic effort to prevent an actual consideration of the relevant statutory law and precedents. See Docket Entry No. 6, at paragraph 1.

"Petitioners were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim. It was permissible for petitioners to seek a valuation in proposing their Chapter 13 plan." *Nobelman v. Am. Savings Bank*, 508 U.S. 324, at 328, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). As Appellees rely exclusively on the *Nobelman* decision authored by Justice Thomas to affirm their position, it is telling that the beginning of Justice Thomas' analysis is contrary to Appellees' position on 11 U.S.C. § 506. See, e.g., Docket Entry 6-1, at page 9. Justice Thomas held that the "portion of the bank's claim that exceeds [the fair market value of the property] is an "unsecured claim component" under § 506(a).", *Id.,* 508 U.S. at 329. Appellees focus on that portion of the opinion which indicates "that determination does not necessarily mean that the 'rights' the bank enjoys as a mortgagee, which are protected by § 1322(b)(2), are limited by the valuation of its secured claim." *Id.* Justice Thomas held that those "rights" were determined by state law. *Id.* However, in accordance with state law, all mortgages are secured, even if, after application of § 506, such mortgages are wholly unsecured. Without more careful examination of the opinion of Justice Thomas, avoidance of a wholly unsecured mortgage would be prohibited by § 1322(b)(2), as such would, by Appellees' logic, constitute an impermissible modification of the rights of the mortgagee. Without that more careful examination of *Nobelman*, the well-established ability of Chapter 13 debtors to avoid wholly unsecured mortgages would be in jeopardy. See, e.g., *In re McDonald,* 205 F.3d 606, supra; *Minn. Housing Fin. Agency v. Schmidt,* 765 F.3d 877 (8th Cir. 2014); *Zimmer v. PSB Lending Corp. (In re Zimmer),* 313 F.3d 1220 (9th Cir. 2002); *Dickey v. Ben. Fin. (In re Dickey),* 293 B.R. 360 (Bankr.M.D.Pa. 2003); *In re Millspaugh,* 302 B.R. 90 (Bankr.D.Idaho 2003); *In re Kemp,* 391 B.R. 262 (Bankr.D.N.J. 2008). See also *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin),* 530 F.3d 230 (3rd Cir. 2008).

A careful examination of Justice Thomas' holding reveals that the critical distinguishing factor between the facts in *Nobelman* and avoidance of wholly unsecured mortgage, is that the mortgage in *Nobelman* was not being eliminated, but merely modified, and wholly unsecured mortgages are eliminated in their entirety. Justice Thomas did not have before him a chapter 13 plan that *satisfied* a mortgage in accordance with § 1325. This readily distinguishes the matter currently before this Court. It is instructive to revisit *Nobelman*:

> Petitioners propose to reduce the outstanding mortgage principal to the fair market value of the collateral, and, at the same time, they insist that they can do so without modifying the bank's rights "as to interest rates, payment amounts, and [other] contract terms." Brief for Petitioners 7. That appears to be impossible. The bank's contractual rights are contained in a unitary note that applies at once to the bank's overall claim, including both the secured and unsecured components. Petitioners cannot modify the payment and interest terms for the unsecured component, as they propose to do, without also modifying the terms of the secured component. Thus, to preserve the interest rate and the amount of each monthly payment specified in the note after having reduced the principal to $23,500, the plan would also have to reduce the term of the note dramatically. That would be a significant modification of a contractual right. Furthermore, the bank holds an adjustable rate mortgage, and the principal and interest payments on the loan must be recalculated with each adjustment in the interest rate. There is nothing in the mortgage contract or the Code that suggests any basis for recalculating the amortization schedule—whether by reference to the face value of the remaining principal or by reference to the unamortized value of the collateral. This conundrum alone indicates that § 1322(b)(2) cannot operate in combination with § 506(a) **in the manner theorized by petitioners**.
> In other words, to give effect to § 506(a)'s valuation and bifurcation of secured claims through a Chapter 13 plan **in the manner petitioners propose** would require a modification of the rights of the holder of the security interest. Section 1322(b)(2) prohibits such a modification where, as here, the lender's claim is secured only by a lien on the debtor's principal residence.

*Nobelman*, 508 U.S. at 331-32(emphasis added). *Nobelman* does not hold that § 506 is inapplicable where § 1322(b)(2) applies. *McDonald v. Master Fin., Inc. (In re McDonald),* 205

F.3d 606, 611(3rd Cir. 2000)("The Supreme Court did not adopt the Fifth Circuit's view that § 506(a) is inapplicable."). The Plan applies § 506 in conformity with § 1322(b)(2).[1]

Debtor merely seeks to utilize 11 U.S.C. § 506 to eliminate the Mortgage, not modify the rights of Defendants. Modify is defined as: "To alter; to change in incidental or subordinate features; enlarge, extent; amend; limit, reduce. Such alteration or change may be characterized, in quantitative sense, as either an increase or decrease." Black's Law Dictionary 1004 (6th ed. 1990). That is the word used in § 1322(b)(2), and the word used in *Nobelman*. Modification is defined as: "A change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact." *Id*. Satisfaction is most simply defined as the "discharge of an obligation." See *Id.*, at 1342.[2] While holdings prior to *Nobelman* have been limited, they nonetheless provide guidance as to the appropriate interaction of § 506 and § 1322(b)(2).

> A creditor's right to payment—what is due it—is generally determined according to state law, *see Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). But the manner in which the right to payment must be satisfied is fixed by the Code, which accords different treatment to claims depending on whether they are secured or unsecured. *See, e.g.,* Code §§ 1129(b)(2)(A), 1225(a)(5)(B), 1325(a)(5)(B); *cf.* Code § 101(5)(A) (1992 Supp.) ("claim" is any "right to payment, whether ... secured, or unsecured"). Hence, bifurcating Federal Home's claim into unsecured and secured portions does not, for purposes of § 1322(b)(2), modify its "rights," but rather simply determines how, under the Code, its right to payment must be **satisfied**. *See In re Hart,* 923 F.2d at 1411 (bifurcation is a recognition of the legal status of creditor's interest in debtor's property, not modification of the mortgage); *see also* 3 Collier on Bankruptcy § 506.04[1] (15th Edition) (Collier) (§ 506(a) "provides a measure of the entitlements of the holders of secured claims").

---

[1] "Applies" may be an incorrect term. § 506 simply defines what portion of a claim is secured and what is unsecured. "Application" in this sense applies to valuation by the Court. There is only one exception, in the hanging paragraph of § 1325(a), which is inapplicable to the instant case.

[2] Satisfaction is defined by the version of Black's Law Dictionary owned by Counsel for Debtor, but elimination is the term used by Courts addressing the issue.

*In re Bellamy*, 962 F.2d. 176, 180 (2nd Cir. 1992)(emphasis added).  This remains an accurate statement with regard to §506, which amply demonstrates how § 506 operates to determine "how, under the Code, [Defendants'] right to payment must be satisfied." *Id.* As Justice Thomas held, Congress did not eliminate the application of § 506 to claims secured solely by residences via § 1322(b)(2). *Nobelman*, 508 U.S. at 328. If Congress had intended to do so, Congress would have utilized the language at the end of § 1325(a), which does preclude application of § 506 to a motor vehicle acquired for personal use.

  The Bankruptcy Code has a general hostility to unsecured claims, with many provisions of the Bankruptcy Code providing for elimination of unsecured claims despite the holder having a security interest or lien. For example, 11 U.S.C. § 524(a)(1) voids, upon discharge, "any judgment at any time obtained, to the extent that such judgment is a determination of personal liability of the debtor." 11 U.S.C. § 522(f) allows a debtor to "avoid the fixing of a lien on an interest of the debtor in the property to the extent that such lien impairs an exemption." 11 U.S.C. § 722 allows an "individual debtor [to] redeem tangible personal property . . . from a lien securing a dischargeable consumer debt . . . by paying the holder of such lien the amount of the allowed secured claim." 11 U.S.C. § 1325(a)(5) allows a debtor to eliminate or satisfy a "secured claim" conditioned upon the holder receiving a distribution from the plan not less than the "value, as of the effective date of the plan" of such secured claim. While this Court may not see fit to reverse the March 22 Order, Appellant clearly presents this Court with a "'substantial possibility' of success on the merits." *In re Gen. Credit Corp.*, 283 B.R. at 660.

### C. Irreparable Harm Absent Relief

Jones will almost certainly lose his home if the March 22 Order is not stayed pending this appeal. This constitutes irreparable harm. See, e.g., *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of the Fed. Reserve Sys.*, 773 F. Supp. 2d 151, at 179-180 (D.C. Cir. 2011).

### D. Injury to Other Parties

This Court and the Bankruptcy Court both have the power to direct the Chapter 13 Trustee to distribute funds, paid by Jones to the Trustee, to Appellees. Appellees are simply incorrect to indicate that confirmation is required for a distribution to them in the Bankruptcy Case. See Docket Entry No. 6, at paragraph 17. See, e.g., 11 U.S.C. 361(1)(specifically authorizing adequate protection via "requiring the trustee to make a cash payment or periodic cash payments.") The Plan specifically contemplates distributions from the Trustee to Appellees. See Docket Entry No. 2-1, at 5.

### E. Public Interest

The public interest is in favor of homeowners' retention of their residences. See, e.g., 12 U.S.C. § 5211, also known as the Troubled Asset Relief Program. See also, e.g., 12 C.F.R. § 1003.1, et seq.; §1007.101 et seq.; § 1015.1 et seq. Even within the Bankruptcy Code, 11 U.S.C. § 1322(b)(5) specifically authorizes curing mortgage defaults via a Chapter 13 Plan.

## V. CONCLUSIONS

For the aforementioned reasons, Appellant **LLOYD ALLAN JONES** prays this Honorable Court for an Order that Grants his Motion for Stay of Order Pending Appeal, including, as necessary, an Order directing the Chapter 13 Trustee to provide adequate protection to Appellees in the form of periodic cash payments to Appellees from funds paid to the Chapter 13 Trustee by Debtor, and for such other and further relief as the Honorable Court deems just and appropriate.

Respectfully submitted,

NEWMAN, WILLIAMS, MISHKIN,
CORVELEYN, WOLFE & FARERI, PC.

By: /s/ J. Zac Christman
J. ZAC CHRISTMAN, ESQUIRE
Attorneys for Appellant
Attorney I.D. No. 80009
P.O. Box 511, 712 Monroe Street
Stroudsburg, PA 18360
(570) 421-9090, fax (570) 424-9739
jchristman@newmanwilliams.com