# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LLOYD ALLEN JONES,

    Appellant,

v.

U.S. BANK, N.A., and
AMERICA'S SERVICING COMPANY,

    Appellees.

3:18-cv-01680
(JUDGE MARIANI)

(BANKRUPTCY APPEAL)

## MEMORANDUM OPINION

### I. INTRODUCTION

This case comes before the Court on appeal from the order issued by Middle District of Pennsylvania Bankruptcy Court Judge John J. Thomas on March 22, 2018, granting summary judgment to U.S. Bank. (Doc. 1-1). Appellant, Lloyd Allen Jones, argues that Judge Thomas erred in rejecting Appellant's Proposed Second Amended Plan on the basis that Appellant's proposal for satisfaction of a secured claim in Debtor's residence as provided by the Proposed Second Amended Plan constituted a modification prohibited by 11 U.S.C. § 1322(b)(2) and *Nobelman v. American Sav. Bank.*, 508 U.S. 324 (1993). For the reasons that follow, the Court will deny Jones' appeal, affirm the Bankruptcy Court's March 22, 2018, order, and remand the case to the Bankruptcy Court for further proceedings

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 18, 2006, Appellant and Debtor Lloyd Allan Jones ("Jones") and his then-wife, Carla A. Jones, executed an Adjustable Rate Note in favor of Mortgage Lenders Networks USA, Inc., evidencing their obligation to repay a loan made to them by MMLN in the original principal amount of $208,800 (Doc. 2, at 231-34). Pursuant to the Note, Jones was required to repay the Loan in full over thirty years by making 360 consecutive monthly payments of the principle, with accrued interest based on an adjustable interest rate. (*Id.*). Moreover, the Note provided that the initial interest rate was 11.7508% per annum, and the initial monthly payment was $2,107.65. (*Id.*). On August 18, 2006, Appellant executed a first lien mortgage encumbering the property. (*Id.*).

On September 22, 2008, Jones and Appellees entered into a "Loan Modification Agreement," where Appellants agreed that the Note would be modified as follows:

> (a) as of October 1, 2008, the unpaid principal balance of the Note would be $231,314.23; (b) interest would accrue on this new unpaid principal balance at a fixed rate at 11.750% per annum; (c) the new principal and interest payments would be in the amount of $2,354.97 per month beginning with the payment due on November 1, 2008; (d) the original maturity date of September 1, 2036 would remain in effect; (e) the Borrowers would make the new monthly principal and interest payments to the 'Lender' until all principal and interest was paid in full; and (f) if the Borrowers still owed amounts under the Note and Mortgage, as modified by the Loan Modification Agreement, on the Maturity Date, those sums would be paid in full on the Maturity Date.

(Doc. 12, at 22) (citing Doc. 2, at 265-67).

Jones filed a Chapter 13 Bankruptcy case on May 25, 2016, with the United States Bankruptcy Court for the Middle District of Pennsylvania. (Doc. 7, at 1). On that same day,

Jones also filed an original proposed Chapter 13 plan. (*Id.*). On September 29, 2016, Appellees filed a secured proof of claim of a mortgage, establishing that the amount of debt owed by Appellant to U.S. Bank as of the petition date was $446,812.25. (Doc. 2, at 53). In addition to the proof of claim, Appellees attached a Mortgage Proof of Claim Attachment (Official Form 410-A) (to indicate that the mortgage is secured by the Debtor's principal business), an adjustable rate note, a mortgage, an assignment of the mortgage, a loan modification agreement, and an escrow account disclosure statement. (*Id.* at 53-67).

On November 4, 2016, Appellant filed a First Amended Chapter 13 Plan, wherein Appellant proposed payments equal to the fair market value of the property plus interest at 5.5% per annum. (*Id.* at 70-77). On December 12, 2016, U.S. Bank objected to confirmation of the First Amended Plan. (*Id.* at 78-79). On March 6, 2017, Appellant then initiated an adversary proceeding, based on the First Amended Plan against U.S. Bank to seek declaratory relief to: (1) value the property as of the petition date at $135,000 and to determine that the U.S. Bank had a secured claim in the amount of $135,000 and an unsecured claim for all additional amounts owed by the debtor in excess of $135,000; (2) declare void the amount of the lien which exceeded $135,000, to the extent that U.S. Bank held a lien against the property that was greater than $135,000; and (3) declare that the First Amended Plan could be confirmed in that Section 1322(b)(2) and *Nobelman v. American Sav. Bank.*, 508 U.S. 324 (1993), did not apply to Debtor's case because the First

Amended Plan did not propose "to 'modify' U.S. Bank's mortgage or claim, but rather to satisfy it." (*Id.* at 1-14).

On January 4, 2018, pursuant to an agreement between the parties, Appellant filed a Second Amended Plan, which is the same in all respects as the First Amended plan, except that it reflected the agreed-upon fair market value of the property of $136,000. (Doc. 2-1). Thereafter, the adversary action reviewed the Second Amended Plan.

In the Bankruptcy Court, after the close of discovery, Appellees moved for summary judgment. (*Id.* at 167-72). On March 20, 2018, oral argument was held on the motion for summary judgment. (Doc. 3). On March 22, 2018, the United States Bankruptcy Court for the Middle District of Pennsylvania entered an order granting summary judgment in favor of Appellees. (Doc. 1-1). In that order, the Bankruptcy Judge: (1) valued the Debtor's residence at $136,000 (as agreed by the parties); (2) allowed the U.S. Bank Secured Claim to have a secured claim in the Debtor's underlying bankruptcy case in the amount of $136,000 and unsecured claim for all sums due under the Loan Documents as of the Petition Date that are in excess of $136,000; (3) declined to declare void the amount of the lien which exceeded $136,000; (4) held that Appellant was not entitled to declaratory relief because the Second Amended Plan's proposed treatment of Appellees' secured claim violated 11 U.S.C. § 1322(b)(2) and the Supreme Court's holding in *Nobelman*; (5) denied confirmation of the Second Amended Plan because it did not comply with 11 U.S.C § 1322(b)(2); and (6) directed Appellant to file a Third Amended Chapter 13 Plan within thirty

4

days of the date of entry of the Summary Judgment Order that did not modify U.S. Bank's rights and otherwise complied with the Bankruptcy Code. (*Id.*). To date, Appellant has yet to file the Third Amended Plan as required by the March 22, 2018, order.

On April 19, 2018, Appellant filed a notice of appeal regarding the March 22, 2018, order to appeal the order directly to the United States Court of Appeals for the Third Circuit. (Doc. 7, at 2). On that same day, Jones filed a Request for Certification of Direct Appeal to the Court of Appeals, which Judge Thomas granted on May 9, 2018. (Doc. 2, at 7). In the Bankruptcy Court, on May 7, 2018, Appellant moved to stay the summary judgment order pending appeal, but that motion was denied on June 5, 2018, by Judge Thomas. (Doc. 5-2). On June 8, 2018, Jones filed a Petition for Permission to Appeal and a Motion to Stay Order Pending the Appeal with the Third Circuit. (Doc. 9, at 2). However, on August 22, 2018, the petition to appeal and a subsequently-filed motion for stay of order pending appeal were both denied by the Third Circuit without opinion. (Doc. 5-3). On August 23, 2018, an appeal "from [the Bankruptcy Court's] order granting summary judgment in favor of Defendants, which also denied confirmation of a Chapter 12 Plan on the Basis of a violation of 11 U.S.C. § 1322(b)(2)" was brought before this Court. (Doc. 1). Thereafter, on September 5, 2018, Appellant filed a motion to stay the March 22, 2018, order pending appeal (Doc. 5), which this Court denied on October 11, 2019 (Docs. 16, 17).

### III. ANALYSIS

Jones appeals the Bankruptcy Court's decision on the grounds that the Bankruptcy Court erred in concluding that Jones' Second Amended Plan "modifies" Appellees' rights in violation of 11 U.S.C. § 1322(b)(2). (Doc. 9, at 3). Jones argues that his plan, instead, "satisfies" the secured claim, which is "distinguishable from modification, which by definition leaves a claim partially intact." (*Id.*). For the reasons that follow, the Court rejects Jones' arguments.

### 1. Interlocutory Order

Appellees note that that the March 22, 2018, order, at issue in this appeal is an "interlocutory order and can only be appealed pursuant to 28 U.S.C. § 158(a)(3) and its [*sic*] not appealable as of right as a final order or judgment under 28 U.S.C. § 158(a)(3)." (Doc. 12, at 19 n.5). The Court finds that Appellant's underlying appeal is from an interlocutory order of the Bankruptcy Court, as to which Appellant has not filed a motion for permission to appeal pursuant to 28 U.S.C. § 158(a)(3).

A party can typically only appeal as of right from a final decision in ordinary civil litigation. *See Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 42 (1995). Bankruptcy cases differ, however, in that "[a] bankruptcy case involves 'an aggregate of individual controversies,' many of which would exist as a stand-alone lawsuits but for the bankrupt status of the debtor." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) (quoting 1 Collier on Bankruptcy ¶ 5.08[1][b], p. 5-42 (16th ed. 2014)). In bankruptcy cases, "Congress has long provided that orders in bankruptcy cases may be immediately appealed if they

dispose of discrete disputes within the larger [bankruptcy] case." *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 657 n.3 (2006).

Nonetheless, an order denying confirmation of a plan is "not final, so long as it leaves the debtor free to propose another plan." *Bullard,* 135 S. Ct. at 1692. The Supreme Court further explained that a denial of a plan confirmation is not final because

> [d]enial of confirmation with leave to amend . . . changes little. The automatic stay persists. The parties' rights and obligations remain unsettled. The trustee continues to collect funds from the debtor in anticipation of a different plan's eventual confirmation. The possibility of discharge lives on. "Final" does not describe this state of affairs. An order denying confirmation does rule out the specific arrangement of relief embodied in a particular plan. But that alone does not make the denial final any more than, say, a car buyer's declining to pay the sticker price is viewed as a "final" purchasing decision by either the buyer or seller. "It ain't over till it's over."

*Id.* at 1693.

Here, the order in this underlying appeal arises out of a bankruptcy proceeding that ultimately seeks to confirm a Proposed Plan which the Bankruptcy Court rejected. (Doc. 1-1, at 2). In doing so, the Bankruptcy Court directed Appellant to file another Plan consistent with its determination that Appellant's Second Amended Plan violated 11 U.S.C. § 1322(b)(2). (*Id.*). Appellant has yet to file a Third Amended Plan. Although the time for doing so has long lapsed, nothing in the record suggests that Appellant is no longer obligated or allowed to provide a plan. Thus, the order in this underlying appeal falls squarely in line with the order described by the Supreme Court in *Bullard*, which the Supreme Court concluded was interlocutory.

Furthermore, pursuant to 28 U.S.C. § 158(a)(3), Appellant has neither sought nor been granted leave to appeal the interlocutory order as required. Under 28 U.S.C. § 158(a)(3), a district court shall have jurisdiction to hear appeals "with leave of court, from other interlocutory orders and decrees" of the Bankruptcy Court. However, this Court has not provided such leave and declines to do so. *See In re W.R. Grace & Co.*, 2009 U.S. App. LEXIS 29818, at *3 (3d Cir. 2009) ("Because the Bankruptcy Court's order was interlocutory, the District Court's decision whether to exercise jurisdiction to review the order . . . was discretionary.") (citing 28 U.S.C. § 158(a)(3)). Accordingly, the interlocutory nature of the underlying appeal without proper leave provides a basis for denying this appeal.

### 2. Merits

Assuming, *arguendo*, that the underlying appeal is not interlocutory in nature, the District Court would have jurisdiction to hear this appeal from a Bankruptcy Court's final order pursuant to 28 U.S.C. § 158(a)(1). The Court reviews "the Bankruptcy Court's findings of fact for clear error and exercise[s] plenary review over questions of law." *In re Hechinger Inv. Co. of Delaware, Inc.*, 489 F.3d 568, 573 (3d Cir. 2007). "A finding of fact is clearly erroneous only if it is 'completely devoid of minimum evidentiary support displaying some hue of credibility or bears no rational relationship to the supportive evidentiary data.'" *Havens v. Mobex Network Servs., LLC*, 820 F.3d 80, 92 (3d Cir. 2016) (quoting *Berg Chilling Sys., Inc. v. Hull Corp.*, 369 F.3d 745, 754 (3d Cir. 2004)).

Jones appeals the order issued by Judge Thomas on March 22, 2018, that rejected Jones' Proposed Second Amended Plan on the basis that it violated 11 U.S.C. § 1322(b)(2) and *Nobelman*. (Doc. 1). Jones contends that the Second Amended Plan does not constitute a modification in violation of 11 U.S.C. § 1322(b)(2) or *Nobelman* because it "satisfies and eliminates" the mortgage pursuant to the application of Section 506(a). (Doc. 7, at 6). This Court disagrees that Jones' Proposed Plan does not constitute a modification in violation of § 1322(b)(2).

To ascertain the merits of the argument, the Court will review the two relevant provisions of the Bankruptcy Code at issue. 11 U.S.C. § 506(a) allows Debtors "to modify creditors' claims into secured and unsecured portions." *In re Rones*, 551 B.R. 162, 167 (D.N.J. 2016) (citing 11 U.S.C. § 506(a)). It provides that "an allowed claim of a creditor secured by a lien on a property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in such property" and is deemed unsecured to the extent that it exceeds that value. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 239 (1989). "The second relevant provision, the antimodification clause, applies only to Chapter 13 bankruptcies. The antimodification clause states that a Chapter 13 plan may 'modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . .'" *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 606, 609 (3d Cir. 2000) (quoting 11 U.S.C. § 1322(b)(2)).

In *Nobelman*, the Supreme Court addressed the interplay between 11 U.S.C. § 506(a) and 11 U.S.C. § 1322(b)(2). The Third Circuit's summary of *Nobelman* is instructive:

> In *Nobelman v. American Savings Bank*, the Supreme Court held that a Chapter 13 debtor who had a single mortgage with an outstanding balance greater than the value of the debtor's residence could not divide the mortgage, pursuant to 11 U.S.C. § 506(a), into secured and unsecured parts and treat only the secured part as subject to the antimodification clause. According to *Nobelman*, the full outstanding balance of the mortgage is governed by the antimodification clause.

*McDonald*, 205 F.3d at 607-08 (internal citations omitted). Thus, "the antimodification clause bars a debtor from modifying the rights of a creditor who has a claim secured only by the debtor's principal residence." *Id.* at 609. "[I]f even one dollar of a creditor's claim is secured by a security interest in a debtor's principal residence, then the *entire* claim—both secured and unsecured portions—cannot be modified under Section 1322." *Rones*, 551 B.R. at 168 (citing *In re Vidal*, 2013 WL 441605, at *3 (Bankr. D. Del. 2013)).

In this matter, Jones advances the exact argument rejected by the Supreme Court in *Nobelman*. Like the debtor in *Nobelman*, Jones is a Chapter 13 debtor who also has a single mortgage with an outstanding balance greater than the value of his residence. *Nobelman*, therefore, clearly directs the outcome of this case, and Jones' argument to the contrary is without merit.

More specifically, Jones' argument that the Second Amended Plan "satisfied" the mortgage rather than "modified" it – fails to consider that the Proposed Second Amended Plan indeed modifies, among other things, the interest rate to 5.5 % from the 11.25 %

10

applied in the contract. See *Nobelman*, 968 F.2d at 331-32. Moreover, the Second Amended Plan proposes a modified principal balance of $136,000, yet Appellees' proof of claim establishes a claim of $446,812.25. As such, in line with *Nobelman*, these modifications violate §1322(b)(2). In Jones' case, a modification of anything with respect to the creditor's rights is a violation of 11 U.S.C. § 1322(b)(2).

Jones directs the court to *McDonald v. Master Fin., Inc (In re McDonald)*, 205 F.3d 606 (3d Cir. 2000), which Jones argues supports his argument that elimination and satisfaction of a mortgage does not constitute a modification of Appellees' rights. (Doc. 9, at 8-9. Nonetheless, the Third Circuit in *McDonald* reached the conclusion that there was no violation of § 1322(b)(2) because that case involved "a second or junior mortgage if that mortgage is wholly unsecured by any remaining value in the residence." *McDonald*, 205 F.3d at 608. The Third Circuit further explained,

> [i]f a mortgage holder's claim is wholly unsecured, then after the valuation that Justice Thomas said that debtors could seek under § 506(a), the bank is not in any respect a holder of a claim secured by the debtor's residence. The bank simply has an unsecured claim and the antimodification clause does not apply. On the other hand, if any part of the bank's claim is secured, then, under Justice Thomas's interpretation of the term "claim," the entire claim, both secured and unsecured parts, cannot be modified.

*Id.* at 612. In light of that, the Third Circuit held "that a wholly unsecured mortgage is not subject to the antimodification clause in § 1322(b)(2)." *Id.* at 614. That is clearly not the case here, where U.S. Bank's mortgage remains secured. Here, unlike the debtor in *McDonald*, Jones' claim is a single (first) mortgage and is secured by a security interest in

11

Jones' residence, at least to the fair market value of $136,000. Thus, because the claim is secured by a security interest in the debtor's principal residence, and the mortgage is a single (first) mortgage not completely undersecured, *McDonald* is irrelevant, and, pursuant to *Nobelman*, the claim cannot be modified under §1322(b)(2).

Additionally, Jones argues that the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") supports his argument that BAPCPA allows secured claims that may not be modified to nonetheless be satisfied by the interplay between § 506 and § 1322(b)(2). (Doc. 9, at 11). Jones is mistaken. He cites no authority to support the proposition that BAPCPA altered *Nobelman*. Additionally, numerous courts have found that *Nobelman* remains good law, § 1322(b)(2) or § 506(a). *See, e.g., Wells Fargo Bank, N.A. v. Scantling (In re Scantling)*, 754 F.3d 1323, 1329 (11th Cir. 2014) (finding that BAPCPA did not amend sections 506 or 1322(b)); *Branigan v. Davis (In re Davis)*, 716 F.3d 331, 335-36 (4th Cir. 2013) (finding that, in light of BAPCPA, the Supreme Court's interpretation of *Nobelman* still applies). Further, "[w]hen Congress enacts legislation, it is presumed to act with knowledge of the 'existing law and judicial concepts.'" *Id.* at 226 (quoting *Farina v. Nokia Inc.*, 625 F.3d 97, 112 (3d Cir. 2010)). Here, where *Nobelman* was decided well before BAPCPA, and where there is no legislative history establishing that Congress intended to modify *Nobelman*, this Court cannot conclude that BAPCPA modified *Nobelman* in any way. Accordingly, the Court rejects Jones' argument that BAPCPA provides any support for its claim.

Finally, the Court rejects Jones' argument that "public policy supports retention of residences." (Doc. 9, at 13). Jones provides no support for this argument, and, as Appellees point out (Doc. 12, at 40), this argument is completely undermined by the concurrence in *Nobelman,* which indicates "that favorable treatment of residential mortgagees was intended [by Congress] to encourage the flow of capital into the home lending market. It therefore seems quite clear that the Court's literal reading of the text of the statute is faithful to the intent of Congress." *Nobelman,* 508 U.S. at 332 (Stevens, J., concurring).

In light of the foregoing, this Court cannot conclude that the Bankruptcy Court was incorrect in determining that confirmation of Jones' Proposed Second Amended Plan had to be denied due to a violation of 11 U.S.C. § 1322(b)(2).

## IV. CONCLUSION

For the foregoing reasons, this Court will deny Jones' appeal, affirm the Bankruptcy Court's March 22, 2018, order, and remand the case to the Bankruptcy Court for further proceedings. A separate Order follows.

Robert D. Mariani
United States District Court Judge